# IN THE COURT OF APPEALS OF IOWA

No. 18-1290
Filed December 19, 2018

**IN THE INTEREST OF K.H. and E.H.,**
**Minor Children,**

**K.H., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

A father challenges the termination of his parental rights to two children. **AFFIRMED.**

David R. Fiester, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kim A. Opatz of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor children.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

This appeal involves K.H., age fourteen, and his sister, E.H., age six. Their father, Kyle, challenges the juvenile court order terminating his parental rights.[1] He contests the State's proof that the children could not be returned to his custody. *See* Iowa Code § 232.116(1)(f)(4) (2018). He also asserts termination was not in the children's best interests because of their strong attachment to him. *See* Iowa Code §§ 232.116(2), (3)(c).

After our independent review of the record, we agree with the straightforward conclusions reached by the juvenile court.[2] Kyle has made little progress in addressing the homelessness, unemployment, and general instability that led to the children's removal from parental custody. Termination of Kyle's rights and likely adoption by their paternal grandparents is the superior option to protect and nurture these children now and into the future.

## I.    Facts and Prior Proceedings

Kyle and Dawn were married in 2002 and separated in 2016. The couple had two children, K.H. and E.H. In January 2017, the children moved in with Kyle's mother and her husband. Kyle recalled his family was being evicted from their

---

[1] The order also terminated the rights of the children's mother, Dawn. She is not a party to this appeal.

[2] We review child-welfare proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings but give them weight, especially when witness credibility is a key consideration. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). As the petitioning party, the State must offer clear and convincing proof, which means we have no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

apartment for failing to pay rent and "had no place to go." The grandparents agreed to take care of the children while the parents tried to obtain housing.

What was meant to be a temporary fix turned into an extended stay. About eighteen months later, in July 2018, Kyle was still homeless and the children remained with their grandparents.

And in the meantime, the Iowa Department of Human Services (DHS) opened a child-welfare case. In April 2017, the DHS investigated a report Dawn was using methamphetamine while caring for the children. Kyle was in jail at the time. When the DHS investigator contacted K.H. at his middle school, he reported not having seen his parents for several weeks. K.H. grew emotional when telling the investigator Kyle had been physically violent toward Dawn and K.H. had tried to place himself between his parents. But K.H. felt safe in the care of his grandparents.

In May 2017, the juvenile court approved the children's formal removal from parental custody. And in June, both parents stipulated to the court adjudicating K.H. and E.H. as children in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2).

In August, the juvenile court ordered the parents to undergo substance-abuse and psychological evaluations and to follow through with any recommendations. Kyle never obtained either evaluation. In fact, throughout the CINA proceedings, he did not comply with the DHS case expectations. He completed no drug testing, was inconsistent with visitation, did not stay in touch with service providers, and did not obtain stable housing or employment.

The State petitioned to terminate parental rights in May 2018. After a hearing in mid-July, the juvenile court issued its termination order. Kyle filed a timely petition on appeal.

## II. Analysis

### A. Statutory Ground

The juvenile court relied on section 232.116(1)(f) as the basis for termination. That section requires proof of these elements:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Kyle contests only the fourth element—whether K.H. and E.H. could be returned to his care at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (indicating statutory language "at the present time" refers to the termination hearing). But time was not on Kyle's side. He is not actually alleging he was ready to resume care of the children at the time of the hearing.

Instead, he contends:

> For the first time in over a year, things were beginning to come together for Kyle and gave him hope that his children could be returned to him soon. For the Court to not grant Kyle's request for additional time to secure housing for himself and the children was in error.

Even if we view Kyle's argument as a request for additional time to reunify under Iowa Code section 232.104(2)(b), the juvenile court may defer permanency

only if it determines the need for removal "will no longer exist at the end of the additional six-month period." The record does not support any further delay in moving K.H. and E.H. toward adoption. The juvenile court decided Kyle's testimony that he would be able to resume care of the children in the near future "lacked credibility." We defer to that finding. *See A.M.*, 843 N.W.2d at 110 (noting that we give weight to the juvenile court's fact findings, especially those concerning witness credibility).

The record reveals a risk of ongoing harm if the children were returned to Kyle's care. As the juvenile court concluded, the State proved by clear and convincing evidence Kyle could not provide K.H. and E.H. with "safe, stable housing, now or anytime in the reasonably near future."

### B. Best Interests and Bonding

In his second issue, Kyle points out termination is not mandatory if severing ties is not in the best interest of the children or would be detrimental because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(2), (3)(c). He also highlights the bond between the siblings, and worries termination could lead to their separation.

In evaluating the children's best interests, we give primary consideration to their safety, long-term nurturing and growth, and physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (interpreting Iowa Code section 232.116(2)). We also consider whether the children are integrated into their foster family and if the foster parents are willing to adopt. *See* Iowa Code § 232.116(2)(b).

The bottom line is Kyle cannot keep the children safe without housing. Their long-term nurturing and growth depends upon a stable environment that Kyle has been unable to offer in the past two years. A relative home study showed K.H. and E.H. were bonded to their grandparents and felt protected in their home. The grandparents have been licensed for foster care and are willing to adopt K.H. and E.H. together. Given these facts, termination was in the children's best interests.

We appreciate that Kyle has a close relationship with his children. The DHS case worker testified the children were excited to see Kyle during visits and were sad when Kyle failed to appear or the interactions were over.[3] Another social worker assigned recognized Kyle's strong bond with the children but believed safety concerns loomed larger for K.H. and E.H.

Section 232.116(3)(c) allows the juvenile court not to terminate if it finds "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See A.M.*, 843 N.W.2d at 113. But "we are not persuaded this is such a case." *See id.* The children's need for permanency takes precedence over their attachment to Kyle. The children have adjusted well to life with their grandparents and developed close relationships with them. The grandparents are willing to adopt both children and preserve the sibling bond. Under these circumstances, termination was appropriate.

**AFFIRMED.**

---

[3] The worker did express concern when Kyle would broach inappropriate topics with the children during visitations. And Kyle admitted engaging in "adult-style conversations" with his fourteen-year-old son at visitations because he didn't want "to lie to him or try to deceive him."